UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY PIESESKI and PATRICK KOST, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 01-993 |
| NORTHROP GRUMMAN CORPORATION and NORTHROP GRUMMAN ELECTRONIC SENSORS & SYSTEMS DIVISION PENSION PLAN, | ) ) ) ) ) ) | Judge McVerry Magistrate Judge Hay |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is respectfully submitted that the Plaintiffs'
Motion for Judgment (doc. 107) be granted in part and denied in
part as follows.  The district court should (1) declare that the
implementation of the 1994 amendment violated sections 204(g) and
208 of ERISA, 29 U.S.C. §§ 1054(g) and 1058; (2) enter judgment
for all class members who have satisfied the pre-Amendment
conditions for the PJS Pension for the difference between the PJS
Pension benefits they should have received and the pension
benefits they actually received, together with pre-judgment and
post-judgment interest at the statutory rate set forth in 28
U.S.C. § 1961, taking into consideration severance benefits
already paid and providing defendants with an offset therefor;
(3) deny plaintiffs' request for an Order requiring defendants to

provide and/or recompense the class members for retiree medical
and life insurance benefits and any other benefits that
accompanied the PJS Pension; and (4) deny without prejudice
plaintiffs' request for costs, expenses and attorney fees.

REPORT

Plaintiffs Stanley Pieseski and Patrick Kost commenced
this action against Northrop Grumman Corporation ("Northrop") and
its Electronic Sensors & Systems Division Pension Plan (the
"Northrop Plan"), asserting that defendants unlawfully amended
the Northrop Plan to eliminate a subsidized early retirement
pension to which they were entitled, in violation of section
204(g) of the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § 1054(g)(1)(Count I).[1]  Plaintiffs also
allege that Northrop, as Plan Administrator, breached its
fiduciary duty by allowing the Plan to be amended to eliminate
their early retirement pension in violation of section 404(a) of
ERISA, 29 U.S.C. § 1104(a) (Count II).[2]

---

[1]   Section 204(g)(2) of ERISA prohibits any "plan amendment
which has the effect of . . . eliminating or reducing an
early retirement benefit or a retirement-type subsidy."  29
U.S.C. § 1054(g)(2).

[2]   Section 404(a)(1)(A)(I) of ERISA provides that "a fiduciary
shall discharge his duties with respect to a plan solely in
the interest of the participants and beneficiaries and --
for the exclusive purpose of: providing benefits to their
participants and beneficiaries."  29 U.S.C. §
1104(a)(1)(A)(I).

The record shows that plaintiffs were long-time employees of Westinghouse Electric Corporation ("Westinghouse," which later changed its name to CBS Corporation and is presently known as Viacom, Inc.).  While they were employed at Westinghouse, plaintiffs were participants in the Westinghouse Pension Plan (the "Westinghouse Plan").  The Westinghouse Plan contained a subsidized early retirement benefit called the Permanent Job Separation Pension ("PJS Pension") for employees meeting age and service requirements who were laid off due to lack of work.  In 1994, Westinghouse adopted an amendment to its Plan which sought to narrow and ultimately eliminate the PJS Pension after September 1, 1998 (the "1994 amendment").

Effective March 1, 1996, Northrop and Westinghouse entered into an Asset Purchase Agreement, pursuant to which Northrop acquired the Westinghouse facility where plaintiffs worked.  Accordingly, plaintiffs' employment was transferred to Northrop and they became participants in the Northrop Plan.  The 1994 amendment was carried over into the Northrop Plan for Westinghouse employees like plaintiffs who went to work for Northrop in 1996.

In 1999, plaintiffs and other employees were laid off by Northrop under circumstances which would have entitled them to the PJS Pension but for the 1994 amendment.  When plaintiffs'

request for PJS Pension benefits was denied, they filed their class action complaint seeking a declaration that defendants' implementation of the 1994 amendment violated sections 204(g) and 404(a) of ERISA.  Plaintiffs also demanded that defendants pay them PJS Pension benefits to which they are entitled.

In Bellas v. CBS, Inc., 221 F.3d 517 (3d Cir. 2000), cert. denied, 531 U.S. 1104 (2001), the Third Circuit Court of Appeals held that the 1994 amendment to the Westinghouse Plan violated section 204(g) of ERISA.  Specifically, the Court opined: "to the extent CBS amended the Westinghouse Plan in 1994 to eliminate certain plan participants from eligibility for PJS Benefits, it violated section 204(g)."  Id. at 538.  Based on the ruling in Bellas, this Court issued a Memorandum Order in this case dated June 27, 2002, granting the plaintiffs' motion for partial summary judgment on Count I and denying the defendants' cross-motion for summary judgment.[3]  Doc. 38.

The plaintiffs moved for class certification of two proposed Sub-Classes.  By Order dated March 31, 2004, this Court

---

[3]   Thereafter, Northrop filed a third-party complaint and an amended third-party complaint against Viacom, Inc. ("Viacom"), seeking contribution and indemnification from it under ERISA and New York law.  By Order dated April 25, 2005, this Court granted Viacom's motion for summary judgment and on April 28, 2005, entered judgment in favor of Viacom and against Northrop.

granted the motion for class certification as to a Sub-Class of plaintiffs consisting of:

> All persons who were participants in the
> Westinghouse Plan as of January 1, 1994 and
> who were laid off by Northrop Grumman after
> December 31, 1996 under circumstances meeting
> the pre-Amendment requirements for a PJS
> Pension (excluding any such persons who
> received a PJS Pension);

and denied the motion as to a Sub-Class consisting of:

> All persons who were participants in the
> Westinghouse Plan as of January 1, 1994 and
> who are still employed by Northrop Grumman
> and are not yet eligible for Normal
> Retirement under the Plan and who may become
> eligible for a PJS Pension should they be
> laid off at some future date.

Doc. 75.

Presently before the Court is Plaintiffs' Motion for Judgment, wherein plaintiffs seek: (1) a declaratory judgment that defendants' implementation of the 1994 amendment violated Section 204(g) and 208 of ERISA, 29 U.S.C. §§ 1054(g)[4] and 1058[5];

---

[4]   See fn 1, supra.

[5]   Section 208 of ERISA provides in pertinent part as follows:

> A pension plan may not merge or consolidate with, or
> transfer its assets or liabilities to, any other plan
> after September 2, 1974, unless each participant in
> the plan would (if the plan then terminated) receive a
> benefit immediately after the merger, consolidation,
> or transfer which is equal to or greater than the
> benefit he would have been entitled to receive
> immediately before the merger, consolidation, or
> transfer (if the plan had then terminated).

(2) an Order requiring defendants to pay PJS Pension benefits[6] to all class members who have satisfied the pre-Amendment conditions for the PJS Pension; (3) an award of pre-judgment and post-judgment interest at the rate of 6%; (4) an Order requiring defendants to provide and/or recompense the class members for retiree medical and life insurance benefits and any other benefits that accompanied the PJS Pension; and (5) an award of costs, expenses and reasonable attorney fees (statutory and common fund).[7]  Doc. 107.  The matter has been fully briefed and is ripe for review.

---

29 U.S.C. § 1058.

[6]   Initially plaintiffs requested a specified amount in benefits, i.e., $17,587,863.62, which they later reduced to $16,393,991.76, inclusive of "simple interest."  Doc. 109, p. 3.  Plaintiffs calculated the PJS Pension benefits for each individual class member based on the assumption that all class members would elect to take their benefits in a lump sum payment.  However, Plaintiffs now acknowledge that certain class members may elect a lump sum and others may elect an annuity and should they elect the latter, the total dollar amount of benefits to be paid would change.  Because it appears that any final tally of benefits must await election by each class member, the Court will not address plaintiffs' calculations of the specified sum and defendants' objections thereto.

[7]   Plaintiffs have indicated they do not intend to independently pursue their claim at Count II since the relief requested would be duplicative of that requested at Count I.

The parties agree that the class members should be placed in the same position that they would have occupied absent the elimination of the PJS Pension benefits, i.e., the Court should make the class members "whole."  The parties further agree that to make the class members whole they should receive the difference between the PJS Pension benefits they should have received and the pension benefits they actually received.[8]

Therefore, based on the Court's previous grant of partial summary judgment in plaintiffs' favor, the district court should declare that the implementation of the 1994 amendment violated sections 204(g) and 208 of ERISA, 29 U.S.C. §§ 1054(g) and 1058, and enter judgment for the plaintiffs for the difference between the PJS Pension benefits they should have received and the pension benefits they actually received.

Given their agreement on the remedy to which the class members are entitled, it would seem that the parties should have been able to reach a consensus on the precise amount of the various benefit options to present to each class member for election.  However, plaintiffs have not provided the Court with a

---

[8]   Defendants have indicated that the Court should order the reformation of the Northrop Plan.  Because it is well within the Court's power simply to order the Plan to effectuate a make-whole remedy by paying the class members the difference between the PJS pensions they should have received and whatever pension payments they actually received, an order to reform the Plan is not required.

detailed schedule of benefits to be awarded because, inter alia, the parties disagree whether certain accompanying benefits and/or set-offs may be included in the calculations and dispute what interest rate should be employed.

Retiree Medical and Life Insurance Benefits

The plaintiffs argue that in calculating the value or amount of pension benefits they should receive, defendants must include retiree medical and life insurance benefits and any other benefits that accompanied the PJS Pension benefits.  While some or all of the class members may very well be entitled to these accompanying benefits, Plaintiffs have provided no authority by which this Court could order that relief in the context of this lawsuit.

As previously noted, plaintiffs brought suit asserting that defendants violated section 204(g) of ERISA, 29 U.S.C. § 1054(g).  By its terms, section 204(g) and the other sections comprising Part 2 of ERISA apply only to pension plans.  Section 201 of ERISA provides that the participation and vesting requirements set forth in Part 2 of ERISA apply to employee benefit plans "other than . . . an employee welfare benefit plan."  29 U.S.C. § 1051(1).  An employee welfare benefit plan is defined as a plan that provides "medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident,

disability, death or unemployment." 29 U.S.C. § 1002(1). Thus, it appears that plans providing medical and life insurance benefits are excluded from coverage under section 204(g). In granting partial summary judgment to plaintiffs this Court found that the elimination of the PJS Pension benefits violated section 204(g). The Court did not consider any Westinghouse or Northrop welfare plans in reaching this decision. Nor does it appear that such plans could have been properly considered.

Plaintiffs offer two responses on this point. First, they argue that there were documents in effect at the time of the class members' layoffs that retirees, including those entitled to PJS pensions, were entitled to medical and life insurance benefits along with pensions and defendants have not established that any proper amendment terminating eligibility for these benefits was ever put in place. Assuming this to be the case, these fact do not address the exclusion of welfare plans from coverage under section 204(g) and, therefore, the argument is unavailing.

Plaintiffs' second argument is that Count I sets forth not only a section 204(g) claim but, also, a "benefit claim." Recovery on various "benefit claims" is available under ERISA's statutory scheme. Section 502(a) of ERISA sets forth an exhaustive list of civil remedies available under the statute.

9

Section 502(a) authorizes three types of suit: (1) actions "to recover benefits" under the terms of the plan at issue (Section 502(a)(1)(B)); (2) actions "for appropriate relief under Section 409" for breach of fiduciary duty (Section 502(a)(2)[9]); and (3) actions "to enjoin any act or practice which violates any provision" of ERISA or "to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of ERISA" (Section 502(a)(3)). 29 U.S.C. § 1132(a)(1)-(3). To the extent that plaintiffs mean to assert at this late date that their "benefit claim"[10] falls under section 502(a)(1)(B), their claim must fail.

---

[9]     Because this section only authorizes suits brought on behalf of the plan and is not a vehicle for plan participants to object to the terms of a plan or to seek benefits they claim to be owed, plaintiffs could not bring their suit under 502(a)(2). See, e.g., Post v. Hartford Life & Acc. Ins. Co., 2002 WL 31741470, *1-2 (E.D.Pa. Dec. 6, 2002).

[10]    Interestingly, plaintiffs' complaint begins with the following statement: "Plaintiffs bring this Complaint to secure their statutory rights to certain pension benefits." Doc. 1, p. 1 (emphasis added). As well, Count I, which is titled "Violation of 29 U.S.C. Section 1054(g)/Benefit Claim," doc.1, p. 8., addresses only pension benefits. It is only in the last line of the ad damnum clause that plaintiffs request that the Court "Grant such further relief as may be just, including but not limited to an award of any other benefits which accompanied the PJS pension, such as retiree medical and life insurance benefits." Doc. 1, p. 12.

An action to recover benefits under section 502(a)(1)(B) of ERISA must be founded upon the "terms of the plan." Feifer v. Prudential Ins. Co. of America, 306 F.3d 1202, 1210 (2d Cir. 2002). Section 502(a)(1)(B) does not allow, however, for recovery of damages which do not arise from the explicit language of the plan at issue. See Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985). It is uncontroverted that under the current Northrop Plan the PSJ Pension benefits have been eliminated. Therefore, since there are no PJS Pension benefits founded upon the "terms of the plan" the plaintiffs are not entitled to recovery of pension benefits and benefits ancillary thereto under section 502(a)(1)(B).

Plaintiffs reply that the effect of the Court's previous ruling is a reformed plan which does contain PJS Pension benefits and, therefore, plaintiffs may proceed under section 504(a)(1)(B) to obtain accompanying welfare benefits. More properly, however, plaintiffs are seeking benefits to which they were purportedly entitled prior to what has now been declared an unlawful plan amendment. As such, plaintiffs are "not seeking to obtain benefits under the terms of the plan. Rather, [they are] seeking to reform the Plan by obtaining a declaration that the [1994 amendment is] void. Section 502(a)(1) does not authorize such a claim." Ross v. Rail Car America Group Disability Income

Plan, 285 F.3d 735, 740 (8th Cir. 2002), cert. denied, 537 U.S. 885 (2002).  Plaintiffs have provided no authority to the contrary.[11]

Thus, it appears that any claim for retiree health and life insurance benefits cannot be addressed through the instant lawsuit.[12]

---

[11]  Plaintiffs indicate that "a claim seeking to have pension benefits calculated without reference to an unlawful amendment is still a claim for benefits under section 502(a)(1)(B)."  Doc. 122, p. 2.  Plaintiffs cite the case of Brothers v. Miller Oral Surgery, Inc. Retirement Plan, 25 E.B.C. 1369 (3d Cir. 2000), as support for this statement of the law.  However, inasmuch as the Circuit's decision is referenced in a "Table of Decisions Without Reported Opinions" and provides only the disposition of the appeal without factual and legal analysis, the value of the Brothers case to the present one is uncertain at best.

Plaintiffs also reference Bellas v. CBS, Inc., 201 F.R.D. 411, 412-17 (W.D.Pa. 2000), suggesting that it supports the argument that they may bring their claim for pension benefits under section 502(a)(1)(B).  However, the plaintiffs in Bellas brought suit under section 204(g) and not 502(a)(1)(B).  Therefore, Bellas does not provide support for plaintiffs' argument here.

[12]  Defendants have acknowledged, however, their obligations under ERISA to administer Northrop's plans in accordance with the terms of those plans and applicable law.  See 29 U.S.C. § 1104(a)("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . in accordance with the documents and instruments governing the plan.").  A fiduciary must act in accordance with the effective plan terms, as finally determined by the courts, to fulfill his duty to administer the plan in accordance with its written terms.  Delgrosso v.

Severance Benefits

Defendants argue that any calculation of benefits must take into account the "substantial severance payments the class members received in lieu of the PJS pension benefits."  Doc. 108, p.3.  Defendants assert that in addition to enhanced pension benefits, employees terminated under a PJS were also entitled to and paid a severance payment, which was paid from company funds, as set forth in the Employee Security and Protection Plan ("Severance Plan").  Had the PJS program remained in place when the class members were terminated, defendants assert that the severance benefits the class members would have received would have been offset by the value of the enhancement they received in their pension benefits.  Defendants argue that it would be inequitable for class members to retain their unreduced severance payment and receive their full pension enhancement, since that would result in a windfall for plaintiffs.

"ERISA does no more than protect the benefits which are due to an employee under a plan . . . [and] simply to place the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing."  Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 133 (3d Cir. 2000)(quotations

_____

Spang and Co., 769 F.2d 928, 935-36 (3d Cir. 1985), cert. denied, 476 U.S. 1140 (1986).

omitted).  As defendants point out, offset provisions are enforceable under ERISA.  <u>See, e.g.</u>, <u>Brown v. Continental Cas. Co.</u>, 348 F.Supp.2d 358, 370 (E.D.Pa. 2004)(offsetting Social Security benefits received from ERISA disability benefits awarded).

Plaintiffs counter with several arguments.  First, Plaintiffs claim that Northrop has not established that the offset provision contained in the Westinghouse Employee Security and Protection Plan was ever put into Northrop's own severance or pension plans.  In response, defendants produced the Declaration of Bruce C. Weinel, Director of Total Compensation for Northrop, wherein Mr. Weinel stated as follows.  In connection with the purchase of assets from Westinghouse, Northrop adopted Westinghouse's severance plan as its own for employees who transferred from Westinghouse to Northrop.  Doc. 121, Ex. B, ¶ 3.  Northrop did not remove Westinghouse's name from the plan document but administered the severance program in accordance with the terms of the Severance Plan.  <u>Id.</u>  As well, the Summary Plan Description of the Severance Plan was distributed to all Northrop employees who were formerly employed by Westinghouse.  <u>Id.</u> at ¶ 4.  The Severance Plan remained in effect through at least August 31, 1998, when the PJS Pension benefit was eliminated from Northrop's pension plan.  <u>Id.</u> at ¶ 5.

14

Thereafter, Northrop adopted a revised severance plan which did not reflect an offset because the PJS Pension benefit had been eliminated when the revised severance plan was adopted.  Id. at ¶ 6.  Thus it appears that the offset provision contained in the Westinghouse Employee Security and Protection Plan was in fact put into Northrop's own severance plan.

Plaintiffs also argue that the request for set-off is akin to seeking recovery for an "overpayment" of benefits under another plan, which is precluded by ERISA's strict fiduciary duties.  Even if not precluded, plaintiffs argue that defendants' remedy would be an action for subrogation, which cannot be brought under section 502(a)(3) since that section provides for equitable not legal actions.  See Great West Life & Annuity Ins. Co., Inc. v. Knudson, 534 U.S. 204 (2002).

In the Court's view, defendants' request for set-off cannot properly be characterized as an effort to recoup some overpayment of benefits.  Rather, defendants seek to be credited for payments already made against payments to be made.  Such a remedy is consistent with Great-West, in which the Supreme Court held that, for an action for restitution to lie in equity, it must not seek to impose personal liability but may only restore particular funds or property that are readily identifiable. Great-West, 534 U.S. at 214.

15

Additionally, plaintiffs suggest in a footnote that defendants have waived the issue of severance offset since they failed to include it in discovery responses.  It appears that plaintiffs asked defendants for the "amount of pension benefit [sic] each participant should have received had each participant been awarded the [PJS]," to which defendants responded without reference to severance benefits.  Doc. 121, Ex. E.  As defendants point out, however, the issue here is not that pension amounts would have been reduced by the severance but just the opposite, that the severance amounts would have been reduced by the enhanced pension.  Thus, it does not appear that there was any waiver of the severance issue.

For the above stated reasons, the calculation of benefits to which plaintiffs are now entitled should provide for an offset of severance benefits.

Interest

The plaintiffs ask the Court to award them pre-judgment and post-judgment interest at the rate of 6%.  While ERISA does not specifically provide for pre-judgment interest it "typically is granted to make a plaintiff whole because the defendant may wrongfully benefit from use of plaintiff's money."  Schake v. Colt Industries Operating Corp. Severance Plan for Salaried Employees, 960 F.2d 1187, 1192 n.4 (3d Cir. 1992).  Generally,

pre-judgment and post-judgment interest are "presumptively appropriate" when ERISA benefits have been delayed as they have in this case.  Fotta v. Trustees of United Mine Workers of America, Health & Retirement Fund of 1974, 165 F.3d 209, 214 (3d Cir. 1998)(approving pre-judgment and post-judgment interest). ERISA does not prescribe what rate of interest should be awarded pre-judgment.  Courts have frequently filled this gap by using the statutory rate for post-judgment interest found in 28 U.S.C. § 1961 for both pre-judgment and post-judgment interest awards. See, e.g., Holmes, 213 F.3d at 131-34.  Interest on delayed ERISA benefits is an equitable remedy left to the discretion of the trial court.  Id., citing Fotta, 165 F.3d at 213-15.  On this issue, the Court is guided by the primary justifications for interest awards in ERISA cases: "making the claimant whole and preventing unjust enrichment."  Fotta, 165 F.3d at 212.

Although plaintiffs have provided a string of citations to cases where courts have awarded interest at rates higher than the statutory Treasury Bill interest rate found in 28 U.S.C. § 1961, see Doc. 109, p.4, plaintiffs have not identified any reason why the award of a higher interest rate is required or justified under the circumstances of this case in order to make plaintiffs whole and prevent unjust enrichment.  Plaintiffs simply conclude -- without supporting facts -- that 6% interest

17

is "probably less than what defendants earned by investing the Class members' money, would be easy to apply and would do 'rough justice.'" Doc. 122, p. 6.  We are not persuaded by such speculation.

Alternatively, plaintiffs suggest that the Court should order defendants to account for and disgorge their earning on surplus funds attributable to their underpayment of pension benefits to the class or use the same rate for the time value of money used by the Plan in reducing participants' accrued pension benefits to a lump sum.  Plaintiffs have cited no authority for and have identified no reason why either of these alternatives should be employed under the circumstances of this case to make plaintiffs whole and prevent unjust enrichment.

Because there is authority in this Circuit to award pre-judgment and post-judgment interest under the circumstances of this case at the T-bill rate set forth in 28 U.S.C. § 1961, the district court should award interest at "the essentially zero-risk yield on Treasury Bills provided for in 28 U.S.C. 1961." Holmes, 213 F.3d 124, 132 (3d Cir. 2000).

Costs, Expenses and Attorney Fees

Plaintiffs have made an unspecified request for costs, expenses and attorney fees.  This request should be denied

18

without prejudice to submit a properly supported petition specifying the costs, expenses and fees plaintiffs seek.

III. <u>CONCLUSION</u>

It is respectfully submitted that the Plaintiffs' Motion for Judgment (doc. 107) be granted in part and denied in part as follows.   The district court should (1) declare that the implementation of the 1994 amendment violated sections 204(g) and 208 of ERISA, 29 U.S.C. §§ 1054(g) and 1058; (2) enter judgment for all class members who have satisfied the pre-Amendment conditions for the PJS Pension for the difference between the PJS Pension benefits they should have received and the pension benefits they actually received, together with pre-judgment and post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961, taking into consideration severance benefits already paid and providing defendants with an offset therefor; (3) deny plaintiffs' request for an Order requiring defendants to provide and/or recompense the class members for retiree medical and life insurance benefits and any other benefits that accompanied the PJS Pension; and (4) deny without prejudice plaintiffs' request for costs, expenses and attorney fees.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written

objections to this report.  Any party opposing the objections

shall have seven (7) days from the date of service of the

objections to respond thereto.  Failure to timely file objections

may constitute a waiver of any appellate rights.

                              Respectfully submitted,

                              /s/ Amy Reynolds Hay
                              AMY REYNOLDS HAY
                              United States Magistrate Judge

Dated: 17 March, 2006

cc:  Hon. Terrence F. McVerry
     United States District Judge

     John T. Tierney, Esquire
     David B. Rodes, Esquire
     Theodore Goldberg, Esquire
     Goldberg, Persky, Jennings & White
     1030 Fifth Avenue
     Pittsburgh, PA 15219

     William T. Payne, Esquire
     Schwartz, Steinsapir, Dohrmann & Sommers
     1007 Mt. Royal Boulevard
     Pittsburgh, PA 15223

     Mary-Jo Rebelo, Esquire
     Houston Harbaugh
     Three Gateway Center
     401 Liberty Avenue, 22nd Floor
     Pittsburgh, PA 15222-1005

     David H. Pittinsky, Esquire
     Carl G. Roberts, Esquire
     David S. Fryman, Esquire
     Melissa R. Lock, Esquire
     Jessica Natali, Esquire
     Basllard, Spahr, Andrews & Ingersoll

1735 Market Street
51st Floor
Philadelphia, PA 19103-7599

Amy E. Dias, Esquire
Jones Day
31st Floor, One Mellon Bank Center
Pittsburgh, PA 15219

Glen D. Nager, Esquire
Jones Day
51 Louisiana Avenue, N.W.
Metropolitan Square
Washington, D.C.  20002